94 So.2d 854 (1957)
Rufus A. GRIFFITH, a minor, by his next friend, B.W. Griffith, Appellant,
v.
SHAMROCK VILLAGE, Inc., a corporation, Appellee.
Supreme Court of Florida, Division B.
May 1, 1957.
*855 Ellis & Adams, Fort Pierce, for appellant.
Sumner & Sumner, Fort Pierce, for appellee.
O'CONNELL, Justice.
Rufus A. Griffith, appellant here, was plaintiff in an action at law against the defendant, Shamrock Village, Inc., appellee here. The action was for compensatory and punitive damages alleged to have been suffered by plaintiff due to the alleged gross negligence of the defendant in failing to deliver a telephone message to plaintiff, who was at that time a tenant of the defendant. The parties will be referred to as they were below.
Plaintiff brings this appeal from a judgment for defendant rendered on a verdict of a jury for defendant.
Plaintiff was working in the City of Fort Pierce, Florida. He and two other men lived in one of the 200 rental units operated by Shamrock Village, Inc. Plaintiff was to be best man in the wedding of one of his brothers, which event was planned to be held in Cullman, Alabama on August 1, 1953.
The record shows the following events. On the night of Thursday, July 30, 1953, another brother, Frank Griffith, attempted to call plaintiff from Jacksonville, Florida to inform him that the place of the wedding had been changed from Cullman to Birmingham, Alabama. A person to person call was placed to plaintiff at Shamrock Village between six-thirty and seven o'clock in the evening. It is alleged that the clerk of defendant answered the telephone and when asked to get plaintiff on the line replied he would go see if he were in. The operator was asked to wait and in a few minutes she was informed that plaintiff had checked out and left no forwarding address. Plaintiff contends he returned from work to his apartment that night about seven o'clock. The records kept by defendant reveal plaintiff actually lived there for another two weeks. No message was placed in plaintiff's box. The next evening, Friday, July 31, friends from Jacksonville, Florida informed plaintiff that his family had unsuccessfully attempted to reach him by telephone the previous day but they did not know for what reason. Plaintiff then tried to reach his family and their neighbors in Jacksonville but was unable to contact anyone who could advise him why his family had tried to reach him. Consequently, on Saturday, August 1, plaintiff traveled from Fort Pierce to Cullman, Alabama. He found no wedding there and after spending the night there returned to Fort Pierce the next day.
Plaintiff brought this action asking for compensatory damages for his travel expenses and loss from work. He also asked for punitive damages. Plaintiff contends that defendant voluntarily assumed the duty of receiving mail and telephone messages for its tenants and was grossly negligent in its lack of care and inattention to duty to him.
Defendant moved to dismiss the complaint. The court refused to dismiss as to compensatory damages but reserved its ruling as to punitive damages. Defendant *856 filed its answer which consisted of denials. The case was tried before a jury. At the conclusion of the evidence the court granted the motion to dismiss as it pertained to punitive damages. The jury found defendant not guilty. A motion by plaintiff for new trial was denied and plaintiff appealed.
Witnesses for plaintiff corroborated his story as set out above. Their testimony also shows that shortly before the alleged telephone incident it came to the attention of plaintiff and his roommates that mail addressed to them at Shamrock Village had been returned to the senders marked "moved, left no address." Their testimony also shows that two days before the telephone incident the plaintiff and his roommates approached the office of the defendant concerning their mail and were informed that the mistake would not again happen.
It appears from testimony produced for plaintiff that one answering the telephone at the desk of defendant's office had but to turn his head to examine a revolving file placed nearby for the registration cards bearing the names of tenants then residing at Shamrock Village.
The person who supposedly answered the telephone call intended for plaintiff was not identified, and did not testify at the trial. Defendant's only witness was the manager of Shamrock Village, Inc. This witness had no personal knowledge of the events which were alleged to have transpired. In summary he testified that: there were about 200 rental units in Shamrock Village and that there was no contract for telephone service to the tenants; there were two telephones, one at the desk in the office, and another, a pay station, "right in back of the front office"; that on several occasions calls to Shamrock Village had come over the pay phone rather than the desk phone; that when the pay telephone rang anyone near the phone, clerk or a guest would answer. On cross-examination he stated that if a call or message came in the office for a tenant the message would be put in the tenant's box.
Plaintiff on appeal raises four questions.
He first contends that certain remarks made by counsel for defendant in his argument to the jury were prejudicial. Second, he says the court itself committed prejudicial error in ruling and commenting on the objection made by plaintiff's counsel to such remarks of defendant's counsel.
We will consider these questions first.
Argument to the jury by counsel for defendant was not recorded, but the order of the court denying motion for new trial reveals:
"In his argument to the jury, after both parties had rested, Counsel For Defendant made the following statement, `Gentlemen of the Jury, I don't believe this boy is telling the truth, I don't believe you believe that he made a telephone call. What this Plaintiff wants is money.', in which Counsel referred to the witness Frank Griffith by the phrase, `this boy'. Counsel for Plaintiff then objected. To overrule said objection, the Court then used the following words, `Gentlemen of the Jury, in making his argument, Counsel is only entitled to draw deductions from evidence.' All of the foregoing occurred in the presence of the jury.
"In connection with the foregoing matter, the Court is of the view that the argument above referred to was not prejudicial and it may be further observed that in instructing the Jury in the case, the Court charged as follows:
"`You as Jurors are to take the law and to it apply the facts as you find them from the evidence before you * * *. And right here, gentlemen, it is proper for me to say that it is upon this evidence, and this alone, that you are to try this case. * *'"
*857 The remarks made by defense counsel were not discussion of the evidence in the cause nor were they in the nature of deductions or inferences which could properly be drawn from the evidence. No attempt was made to impeach plaintiff or his witnesses. Their testimony was neither contradictory nor contradicted by defendant's evidence.
The statements of defense counsel suggest perjury and collusion on the part of plaintiff and his witnesses.
These remarks, being neither based on the evidence nor proper deductions from the evidence, were improper. Watkins v. Sims, 1921, 81 Fla. 730, 88 So. 764; 53 Am.Jur., Trial, Sec. 464, p. 370; Southeastern Greyhound Lines v. Groves, 175 Tenn. 584, 136 S.W.2d 512, 127 A.L.R. 1385.
The court's comment in ruling on plaintiff's objection to these remarks is ambiguous. The judge said, "Gentlemen of the Jury, in making his argument, counsel is only entitled to draw deductions from evidence."
The jury might have understood this comment to mean that the objection was sustained, yet the judge in his order denying the motion for new trial labelled his remarks as an overruling of the objection.
It seems reasonable therefore that the jury might well have taken the comment of the judge to mean that the judge was overruling the objection and that the judge agreed with defense counsel that his statements were proper deductions to be drawn from the evidence.
The statements of defense counsel being improper, the overruling of plaintiff's objection thereto was error.
This error was not cured by the instruction which the court gave the jury. The court instructed the jury that it was to try the case only on the evidence presented before it. Yet he had also stated that counsel for defendant was entitled to draw deductions from the evidence and he allowed the improper statements of counsel to stand, undisturbed, before the jury as matters which could be reasonably deducted from the evidence.
It appears to us that the comment of the judge regarding deductions to be made from the evidence, following in the sequence it did, aggravated rather than corrected the improper statements. The instruction to try the case only on the evidence, in our opinion, did not cure this error.
Where error is made to appear, injury is presumed to follow. Southern Home Ins. Co. v. Putnal, 1909, 57 Fla. 199, 49 So. 922, 929.
Injury to the plaintiff is not difficult to presume under the facts of this case wherein the plaintiff's evidence was not disputed yet the jury rendered a verdict adverse to him.
We conclude that statements of defense were improper and harmful to plaintiff, that the overruling of plaintiff's objection to said statements was prejudicial error, and assuming, but not deciding, that such error could have been cured, it was not cured in this case.
Plaintiff's third point charges that the verdict and judgment is against the weight of the evidence. It is unnecessary to answer this question in view of our ruling on the first two points presented.
Plaintiff's fourth question relates to the court's dismissing that part of his complaint pertaining to punitive damages.
Plaintiff contends that the defendant was guilty of an entire want of care in failing to deliver the telephone message and in advising the operator that he had moved and left no forwarding address. He says this amounts to gross negligence.
Plaintiff's evidence shows and defendant in its evidence admits that it undertook *858 to accept telephone calls and messages for its tenants and if the tenants were not in that a message would be placed in the tenants' box in the office. While defendant denied that it contracted, either orally or in writing, to render such a service, it is clear to us that it had assumed such a duty to plaintiff.
The complaint on which this case was tried sounds in tort, not in contract.
The general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of defendant. But where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse or gross negligence which amounts to an independent tort. 25 C.J.S. Damages § 120, pp. 716-717.
In the case of City of Sebring v. Avant, 1928, 95 Fla. 960, 117 So. 383 and other related cases this Court has defined gross negligence as the want of slight care.
This Court has held that allowance of punitive damages is dependent on a showing of malice, moral turpitude, wantonness or outrageousness of tort. Dr. P. Phillips & Sons, Inc., v. Kilgore, 1943, 152 Fla. 578, 12 So.2d 465; Ross v. Gore, Fla. 1950, 48 So.2d 412.
Plaintiff did not allege nor prove that defendant acted or failed to act from malice or wilfully. He argues that malice is imputed to defendant because of the entire want of care or attention to the implied duty which defendant owed to plaintiff.
In Kirksey v. Jernigan, Fla. 1950, 45 So.2d 188, 17 A.L.R.2d 766 this Court held that punitive damages were allowable for and that malice could be imputed from the entire want of care or attention to duty, or great indifference to the persons, property or rights of others. This is consistent with the theory that punitive damages are allowed as a deterrent to commission by others of similar offenses. The holding in the Kirksey case was recognized in the later case of Crane v. Loftin, Fla. 1954, 70 So.2d 574.
Since the trial judge allowed the claim for punitive damages to remain in the complaint until after all evidence had been submitted at the trial, it seems to us that he reasoned as we have here that punitive damages can be recovered in actions such as this and that malice may be imputed to defendant from gross negligence, i.e., a want of slight care.
It further follows that the trial judge must have concluded that as a matter of law the proof submitted in this case would not support an award for punitive damages. We cannot agree.
There was evidence on which the jury could have found that there was an entire want of care or a want of slight care or attention by defendant to the duty it had assumed toward plaintiff. From this the jury could have imputed malice to the defendant. The evidence could have supported a verdict for punitive damages.
Inasmuch as it was not clear as a matter of law that an award for punitive damages could not be allowed to stand, if rendered by the jury, the court should have instructed the jury thereon and submitted the matter to it for determination. Whether or not the elements are present to warrant it is for the jury to determine in the light of all the evidence presented to it, Dr. P. Phillips & Sons, Inc., v. Kilgore, supra.
The appellee has not favored us with a brief and we do not have the benefit of its contentions in this matter. Briefs of the parties are of great assistance to this Court. If such were not true there would be no cause for allowing them to be filed. Failure to file a brief frequently reacts to the detriment of a party.
*859 Counsel who allows his name to be shown as representing a party in an appeal, or in any other legal proceeding, should either do that which is reasonably required to advance his client's cause, or see to it that his reasons for not doing so are apparent to the client and to the court considering the matter.
Reversed and remanded for new trial.
TERRELL, C.J., and HOBSON and DREW, JJ., concur.