SALTER, J.
*1073 Cat Cay Yacht Club, Inc. ("CCYC"), and fourteen current and former members of CCYC's board of directors[1] (collectively, the "Director Defendants"), petition the Court to issue a writ of certiorari quashing a circuit court order granting a motion by Manuel C. Diaz ("Diaz") for leave to file a fifth amended complaint adding claims for punitive damages to his lawsuit. The underlying lawsuit, commenced in 2012, involves allegedly improper actions taken to oust Mr. Diaz from a private social and recreational club in the Bahamas.
Concluding that the order authorizing amendment to add claims for punitive damages (a) departs from the essential requirements of the applicable Florida statute[2] and controlling precedent and (b) is not a matter adequately remediable in a subsequent, plenary appeal, we grant the petition and quash the order.
Background and Pertinent Facts
Diaz, his wife, and his family have visited the island of Cat Cay in the Bahamas, and fished in the surrounding waters, for some forty years. As their interest in the island and CCYC grew, Diaz joined CCYC (initially as a summer member), and purchased an oceanfront home, vacant lots, and a dock at the Cat Cay Marina. Later he built several oceanfront homes or villas on the island.
CCYC is a Florida corporation organized under the Florida Not For Profit Corporation Act, section 617.01011, et seq., Florida Statutes (2018). CCYC's bylaws "may contain any provision for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation." § 617.0206, Fla. Stat. (2018).
Diaz's fifth amended complaint alleges that he contributed funds and services to CCYC over a course of years, including charitable fundraising to restore island facilities after Hurricane Andrew in 1992 and later storms. He served as president of CCYC for several years. Following the election of one of the defendants to the office of president in 2009, however, Diaz alleges that various disputes arose. These issues percolated by 2011 into a "scheme to justify the firing of [CCYC's then manager] and the expulsion of Diaz from CCYC," according to Diaz.
Diaz alleges that this scheme was then executed in the form of a faulty audit of accounts (by a CPA from an independent accounting firm), defamatory comments by the Director Defendants, and the CCYC board's unanimous vote to expel Diaz as a member of CCYC in February 2012. Diaz's expulsion occurred pursuant to a board resolution reciting that Diaz had engaged in "actions prejudicial to the Club" and rendering him "undesirable as a Member," grounds for expulsion under Section 2.20 of the CCYC bylaws.
In May 2012, an appellate committee of the board denied Diaz's appeal from the expulsion resolution. All of these actions, Diaz maintains, were undertaken by CCYC and the Director Defendants "in bad faith and with malicious purpose, in a manner exhibiting a willful disregard of Diaz's rights and property rights." In January 2014, Diaz filed his initial "Verified Complaint for Damages and Equitable Relief" seeking money damages (including treble damages for certain claims), a mandatory *1074 injunction restoring his membership in CCYC, an accounting, punitive damages "upon a proper showing under Florida law," and other relief.
The complaint was dismissed and the injunctive claim was dismissed with prejudice by a predecessor judge. Amendments and additional dismissals followed, with Diaz ultimately moving to amend his fourth amended complaint to add the claims for punitive damages.
During the trial court hearing on the proposed amendment and the alleged basis for punitive damages, the trial court stated that CCYC and the Director Defendants had not "challenged the evidence," and the court entered no written findings identifying any evidence considered to constitute a "reasonable basis" ( section 768.72(1) ) for the recovery of punitive damages. The order granted the motion to amend without elaboration, and without any differentiation among CCYC and any of the fourteen Director Defendants. The petition for certiorari followed.
Analysis
To obtain relief in this case, the petitioners must establish that the trial court departed from the essential requirements of law, causing material injury to the petitioners for which there is no adequate remedy on appeal. Allstate Ins. Co. v. Langston, 655 So. 2d 91, 95 (Fla. 1995). Review of an order granting a motion to amend to add a punitive damages claim requires us to consider "whether a trial judge has conformed with the procedural requirements of section 768.72...", but the scope of review is "not so broad as to encompass review of the sufficiency of the evidence considered in that inquiry." Globe Newspaper Co. v. King, 658 So.2d 518, 519 (Fla. 1995).
We consider in turn: (1) the conduct of the trial court's hearing inquiring into the "reasonable basis for recovery of such damages"; and (2) the legal impediments to claims for punitive damages in the case at hand.
(1) Conduct of the Hearing; Ruling
A review of the transcript of the hearing on Diaz's motion to amend discloses that counsel for the parties provided the trial court with a "whole box" of documents relating to Diaz's motion to amend. The crux of the fourth amended complaint and the seven counts within it is the expulsion of Diaz from the social club, CCYC, based on his disagreement with the board's decision to fire a general manager and on "credits" claimed by Diaz for landscaping and other contributions of services in lieu of cash contributions or payments. The Director Defendants, like Diaz himself, were highly-successful and financially prosperous individuals with, the pretrial discovery makes clear, strong opinions they were not reluctant to express.
In the language of the motion to amend and much of the hearing, this is styled a "witch-hunt" against Diaz based on a motto to "expel first and ask questions later." A board member/defendant is said to have wanted to control the island of Cat Cay and to have called other members "spoiled brats and little wimps." It is also argued that documents mysteriously disappeared.
Following the board's decision to expel Diaz from membership in CCYC, the appeal board constituted pursuant to the club by-laws "rubber stamped" the board action. Allegedly the board also moved the location for burning the island's trash to a location next to Diaz's property, causing the property to become unsaleable and Diaz to incur substantial financial losses.[3]
*1075 Although the trial court asked several questions, it made no findings identifying the evidence it considered sufficient to provide a statutory "reasonable basis" for granting the motion to amend. The court did not do so during the course of the hearing or in the pre-printed form order with the handwritten, one-word notation, "Granted" after identifying the motion to amend. In a seven count fourth amended complaint, with "a box" of pretrial evidence presented, and fifteen separate defendants,[4] this procedure was a departure from applicable law. Fetlar, LLC v. Suarez, 230 So.3d 97, 99 (Fla. 3d DCA 2017). Bare allegations are insufficient to support a punitive damages claim. Espirito Santo Bank v. Rego, 990 So.2d 1088, 1090 (Fla. 3d DCA 2007).
The hearing, argument of counsel, and colloquy in the present case stand in sharp contrast to the procedure detailed in our recent opinion denying certiorari to quash an order allowing a punitive damages amendment:
[Plaintiff's] motion to amend contained a detailed table outlining the record evidence and sworn declarations that provided the basis for his punitive damages claim. Moreover, the trial court conducted two hearings on the motion and requested supplemental memoranda as to the evidentiary basis for punitive damages against the corporate defendants. Further, [defendants] presented their arguments against [plaintiff's] motion to amend in their written opposition, during both hearings, and in their response to [plaintiff's] court-ordered supplemental memorandum. It is also clear from the record that the trial court applied the correct law. The court, in its order granting the motion to amend, found-based on [plaintiff's] motion, the supplemental memoranda, and the arguments presented during the two hearings-that [plaintiff] "made the requisite showing by evidence in the record or proffered by plaintiff that would support a reasonable basis for recovery of punitive damages as required by Fla. Stat. § 768.72 against defendants ...."
Levin v. Pritchard, 258 So. 3d 545, 547-48 (Fla. 3d DCA 2018).
(2) Legal Impediments Unaddressed by Diaz
The trial court apparently did not consider during the hearing or address in its order the legal insufficiency issues raised by CCYC and the Director Defendants. Specifically, Florida law ordinarily defers to the right of social organizations to regulate their own membership and rules for expulsion. See, e.g., Everglades Protective Syndicate, Inc. v. Makinney, 391 So.2d 262, 266 (Fla. 4th DCA 1980) ("Neither due process nor concepts of fundamental fairness compel the conclusion that an individual is entitled to the association of one or more other individuals against their will.")
Diaz's claims for reversal of the expulsion and reinstatement to membership were dismissed by a predecessor judge in 2014. That being so, the consequences of expulsion were not untangled from Diaz's other claims-interference with property rights, for example-for purposes of the amendment seeking punitive damages. Artful pleading after numerous amendments is not necessarily curative.
*1076 The denial of a motion to dismiss subsequently rewritten allegations is not a green light to add punitive damage claims without following the procedure mandated by section 768.72 (in which the legislature expressly required a more rigorous assessment).
Diaz is correct that the member of a voluntary association is entitled to legal protection when the member's contractual or property rights, and not merely continued membership, are harmed, citing McCune v. Wilson, 237 So.2d 169 (Fla. 1970). What remains unclear is the naked allegation that expulsion somehow caused a forfeiture of Diaz's equity shares in CCYC or rendered his real estate unsaleable or less valuable. The bylaws say otherwise. The statutory procedure obligates a trial court to do more than just accept allegations as true. Bistline v. Rogers, 215 So.3d 607, 610 (Fla. 4th DCA 2017). See also Fla. Hosp. Med. Servs., LLC v. Newsholme, 255 So.3d 348 (Fla. 4th DCA 2018).
Second, the petitioner/defendants raised below and here the one-year statute of limitations applicable under the Florida Not For Profit Act: "Any proceeding challenging an expulsion, suspension, or termination, including a proceeding in which the defective notice is alleged, must be commenced within 1 year after the effective date of the expulsion, suspension, or termination." § 617.0607(3), Fla. Stat. (2018). Diaz and the trial court did not address this bar, though it is uncontroverted that Diaz's circuit court lawsuit was filed well after that one-year limitations period. Diaz's motion to amend and presentation at the hearing on that motion failed to differentiate the barred expulsion claims from those based on other, unrelated actions of CCYC or any individual Director Defendant.
Conclusion
The procedure employed by the trial court in the present case was a departure from the essential requirements of law. The prospect of intrusive financial discovery following a trial court's authorization for an amendment to add a claim for punitive damages is the irremediable injury constituting the second element required for this Court's exercise of its certiorari jurisdiction. TRG Desert Inn Venture, Ltd. v. Berezovsky, 194 So.3d 516, 520 n.5 (Fla. 3d DCA 2016) (describing amendments to add punitive damage claims as a "game changer" in litigation, and urging "the Florida Bar's Appellate Court Rules Committee to review rule 9.130(a)(3) of the Florida Rules of Appellate Procedure to consider whether to include in the rule's catalogue of appealable, non-final orders a trial court's order granting a motion for leave to add a punitive damages claim"); Levin, 258 So.3d at 548 n.4 (same); WG Evergreen Woods SH, LLC v. Fares, 207 So.3d 993, 997 (Fla. 5th DCA 2016).
We grant the petition and quash the order granting the motion to amend.

One defendant and member of the board of directors, Scott Morrison, passed away in 2016. His estate was substituted as a defendant, but punitive damages have not been sought against the estate. Diaz also named Maylene Jimenez, a comptroller of CCYC, as a defendant, but has not served her.

§ 768.72, Fla. Stat. (2018).

We are left to wonder how this requires or permits intervention by a Florida court. CCYC is not a sovereign with complete authority over the island. Governmental regulation of trash burning and nuisance is subject to enforcement by Commonwealth of The Bahamas.

Asked by counsel which counts and which defendants were to be subject to claims in the fifth amended complaint (which, as noted, had not been filed or provided to the defendants), the trial court stated "in all respects."